MORGAN, LEWIS & BOCKIUS LLP
Barbara J. Miller, State Bar No. 167223
P. Bartholomew Quintans, State Bar No. 308085
600 Anton Boulevard, Suite 1800
Costa Mesa, CA 92626-7653
Tel: +1.714.830.0600
Fax: +1.714.830.0700
barbara.miller@morganlewis.com
bart.quintans@morganlewis.com

Attorneys for Defendant
SHERATON OPERATING CORPORATION

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE GUIJARRO, individually, and on behalf of all other similarly situated current and former employees of SHERATON OPERATING CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>SHERATON OPERATING CORPORATION, a corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. **'19CV2237 L     LL**<br><br>**DEFENDANT SHERATON OPERATING CORPORATION'S NOTICE OF REMOVAL**<br><br>[28 U.S.C. §§ 1332, 1441, and 1446]<br><br>Action Filed:   October 16, 2019 |

**TO THE CLERK OF THE SOUTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** Defendant Sheraton Operating Corporation ("Defendant"), by and through the undersigned counsel, removes the above-entitled action to this Court from the Superior Court of the State of California for the County of San Diego, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, on the following grounds.

**I.   PROCEDURAL BACKGROUND**

On October 16, 2019, Plaintiff Jorge Guijarro filed an unverified putative class action complaint for damages in the Superior Court of the State of California, County of San Diego, entitled *Jorge Guijarro, individually, and on behalf of all other similarly situated current and former employees of Sheraton Operating Corporation v. Sheraton Operating Corporation; and Does 1 through 100, inclusive,* Case No. 37-2019-00055141.

On October 23, 2019, Plaintiff served the Complaint, Summons, and Civil Case Cover Sheet on the registered agent for Defendant. Copies of these documents, with a Service of Process Transmittal dated October 23, 2019, are attached hereto as **Exhibit A**, which constitutes all of the pleadings, process, and orders served upon, or by, Defendant in the Superior Court action. Through his Complaint, Plaintiff alleged Defendant violated various provisions of the California Labor Code and committed unlawful business practices. In addition to compensatory damages, Plaintiff seeks civil penalties, disgorgement, and attorneys' fees. *See generally* Compl.

Plaintiff seeks to represent the following Class:

> [C]urrent and former non-exempt employees of DEFENDANT, who worked for DEFENDANT in the State of California for a period of time within the four (4) years preceding the filing of this action.

*Id.* ¶ 4.

Plaintiff alleges the following violations in six causes of action against Defendant: (1) Failure to Provide Required Meal Periods; (2) Failure to Provide Rest Breaks; (3) Failure to Pay All Wages Due; (4) Failure to Provide Accurate Wage Statements; (5) Failure to Pay All Wages Due to Discharged or Quitting Employees; and (6) Violation of California's Unfair Competition Act ("UCL"), Bus. & Prof. Code § 17200.

## II.  REMOVAL IS TIMELY

Plaintiff served the registered agent for Defendant on October 23, 2019. *See* Ex. A. Because this Notice of Removal is filed within thirty days of service of the Summons and Complaint, it is timely under 28 U.S.C. §§ 1446(b) and 1453. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (30-day removal period begins to run when defendant is formally served with a complaint). No previous Notice of Removal has been filed or made with this Court for the relief sought herein.

## III.  THIS COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION UNDER CAFA

Plaintiff brings this action as a putative class action. Compl. ¶ 2. Removal based on Class Action Fairness Act ("CAFA") diversity jurisdiction is proper pursuant to 28 U.S.C. §§ 1441, 1446, and 1453 because (i) the amount placed in controversy by the Complaint exceeds, in the aggregate, $5 million, exclusive of interest and costs; (ii) the aggregate number of putative class members is 100 or greater; and (iii) diversity of citizenship exists between one or more plaintiffs and one or more defendants. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), and 1453. Defendant denies Plaintiff's factual allegations and denies that Plaintiff, or the class he purports to represent, is entitled to the relief requested; however, based on Plaintiff's allegations in the Complaint and prayer for relief, all requirements for

jurisdiction under CAFA have been met.[1] Accordingly, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2).

### A. Diversity of Citizenship Exists.

To satisfy CAFA's diversity requirement, a party seeking removal need only show that minimal diversity exists; that is, that one putative class member is a citizen of a state different from that of one defendant. 28 U.S.C. § 1332(d)(2); *see also, e.g., United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010) (finding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)).

An individual is a citizen of the state in which he is domiciled. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). For purposes of diversity of citizenship jurisdiction, citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986). Plaintiff admits that he worked for Defendant in California and is currently a resident of California. Compl. ¶ 3. The Complaint does not allege any alternate state citizenship. Therefore, Plaintiff is a citizen of California for diversity jurisdiction purposes. Thus, at least one putative class member is a citizen of California for diversity jurisdiction purposes.

Per 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." Sheraton Operating Corporation is a Delaware corporation with its principal place of business in

---

[1] Defendant does not concede, and reserves the right to contest at the appropriate time, Plaintiff's allegations that this action can properly proceed as a class action. Defendant does not concede that any of Plaintiff's allegations constitute a cause of action against it under applicable California law.

Maryland. Declaration of Bancroft Gordon, ¶¶ 3-4. As such, Sheraton Operating Corporation is a citizen of Delaware and Maryland, and not California, for the purposes of determining diversity under CAFA.

Based on the Complaint, at least one member of the putative plaintiff class is a citizen of a state different from at least one defendant. Diversity jurisdiction therefore exists under CAFA. 28 U.S.C. § 1332(d)(2)(A) (requiring only "minimal diversity" under which "any member of a class of plaintiffs is a citizen of a State different from any Defendant").

### B.  The Putative Class Has More Than 100 Members.

Plaintiff asserts claims on behalf of a putative class comprised of "current and former non-exempt employees of DEFENDANT, who worked for DEFENDANT in the State of California for a period of time within the four (4) years preceding the filing of this action." Compl. ¶ 4. Based on Plaintiff's definition, the putative class contains at least 3,000 employees who worked for Sheraton Operating Corporation between October 16, 2015, and the present. Declaration of Kristen Palagano ("Palagano Decl."), ¶ 3.

### C.  The Amount In Controversy Exceeds $5 Million.

Pursuant to CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d)(6). Where a plaintiff does not expressly plead a specific amount of damages, a removing party need only show that it is more likely than not that the amount in controversy exceeds $5 million. *See Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997). However, the amount in controversy simply represents the potential amount at stake—it does not reflect actual liability. *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). Defendant's burden to establish the amount in controversy is by a preponderance of the evidence. *Dart Cherokee Basin Operating Company, LLC v.*

*Owens*, 135 S. Ct. 547 (2014). This exercise does not consider a plaintiff's likelihood of successful recovery. *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018). "An assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that damages might be 'less than the requisite . . . amount' . . . ." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019). "[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee*, 135 S. Ct. at 553. "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 554. "[T]he Court accepts the allegations contained in the complaint as true and assumes the jury will return a verdict in the plaintiff's favor on every claim" in assessing the amount in controversy. *Henry v. Central Freight Lines, Inc.*, 692 F. App'x 806, 807 (9th Cir. 2017).

To drive out any lingering "antiremoval presumption" in CAFA cases, the Ninth Circuit recently "reaffirm[ed] three principles that apply in CAFA removal cases:"

> First, a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of the jurisdictional elements. . . .
>
> Second, when a defendant's allegations of removal jurisdiction are challenged, the defendant's showing on the amount in controversy may rely on reasonable assumptions . . . .
>
> Third, when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy.

*Arias*, 936 F.3d at 922 (internal citations and quotations omitted). "[I]n assessing the amount in controversy, a removing defendant is permitted to rely on 'a chain of reasoning that includes assumptions.'" *Id.* at 925 (quoting

*Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015)). Such assumptions must be reasonably grounded in the underlying allegations of the complaint. *Id.* "If a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case." Senate Judiciary Report, S. Rep. 109-14, at 42 (2005) (citation omitted).

Defendant denies Plaintiff's factual allegations and denies that Plaintiff, or the class he seeks to represent, is entitled to recovery. Defendant properly complied with the Labor Code provisions at issue at all relevant times. However, as detailed below, Defendant has established by a preponderance of the evidence that the amount in controversy exceeds $5 million and that the Court has jurisdiction pursuant to CAFA. 28 U.S.C. § 1332(d)(2). Plaintiff's allegations and prayer for relief have "more likely than not" put into controversy an amount that exceeds the $5 million threshold when aggregating the claims of the putative class members as set forth in 28 U.S.C. § 1332(d)(6).[2]

---

[2] This Notice of Removal discusses the nature and amount of damages placed at issue by Plaintiff's Complaint. Defendant's references to specific damage amounts and citation to comparable cases are provided solely for establishing that the amount in controversy is more likely than not in excess of the jurisdictional minimum. Defendant maintains that each of Plaintiff's claims is without merit and that Defendant is not liable to Plaintiff or any putative class member. Defendant expressly denies that Plaintiff or any putative class member is entitled to recover any of the amounts or penalties sought in the Complaint. In addition, Defendant denies that liability or damages can be established either as to the Plaintiff or on a class-wide basis. No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiff will or could actually recover any damages based upon the allegations contained in the Complaint or otherwise. "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Defendant's] liability." *Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

1. **Plaintiff's First and Second Causes of Action for Failure to Provide Meal and Rest Breaks Put $5,600,000 in Controversy.**

Plaintiff's First and Second Causes of Action allege failure to provide meal and rest periods, respectively. As to each claim, Plaintiff alleges systematic, recurring violations. For example, as to his meal-break claim, Plaintiff alleges:

> [A]s part of its illegal payroll policies and practices to deprive its non-exempt employees of all wages earned and due, DEFENDANT failed to relieve its employees of all duty during meal periods, failed to obtain the written consent of employees for on-duty meal periods, required, permitted, or otherwise suffered its employees to take less than the required 30-minute meal periods or to work through them, failed to provide employees with meal periods within the first five (5) hours of their work, and failed to otherwise provide the required meal periods to their employees . . . . The foregoing was a result of a policy and/or practice of knowingly understaffing such that PLAINTIFFS could not be relieved of all duty for meal periods, requiring PLAINTIFFS to carry radios during meal periods, using the foregoing radios to interrupt meal periods, and generally prioritizing business needs over employee meal periods.

Compl. ¶ 22.

Plaintiff's Second Cause of Action similarly alleges systematic and recurring rest-break violations as a "result of a policy and/or practice of knowingly understaffing such that PLAINTIFFS could not be relieved of all duty for meal periods, requiring PLAINTIFFS to carry radios during meal periods, using the foregoing radios to interrupt meal periods, and generally prioritizing business needs over employee meal periods." Compl. ¶ 26. Plaintiff alleges that Defendant's "illegal policies and practices were applied consistently" and "uniformly" to the putative class. Compl. ¶¶ 18, 20.

For damages, Plaintiff seeks "an additional one (1) hour of compensation at each employee's regular rate of pay" for each failure to provide a meal or rest

period, over a four-year period. Compl. ¶¶ 4, 23, 27.³

For purposes of establishing the amount in controversy for removal under CAFA, "[i]t is not unreasonable to assume that when a company has unlawful policies and they are uniformly adopted and maintained, then the company may potentially violate the law in each and every situation where those policies are applied." *Mejia v. DHL Express (USA), Inc.*, No. CV 15-890-GHK JCX, 2015 WL 2452755, at *4 (C.D. Cal. May 21, 2015) (upholding application of a 100% violation rate); *Ford v. CEC Entm't, Inc.*, No. CV 14-01420 RS, 2014 WL 3377990, at *3 (N.D. Cal. July 10, 2014) ("broad" allegations of "regular" violations support a 100% violation rate). Another district court has held that, with respect to meal or rest period claims, at least a 50% violation rate is an appropriate assumption. *See Oda v. Gucci Am., Inc.*, No. 2:14-CV-07469-SVW, 2015 WL 93335, at *4 (C.D. Cal. Jan. 7, 2015) (50% violation rate was a reasonable assumption based on allegations that class members "sometimes did not receive all of their meal periods in a lawful fashion" and that there was a "policy or practice of not paying additional compensation to employees for missed, uninterrupted [sic], and/or timely meal and/or rest periods").

Since October 16, 2015, non-exempt, hourly-paid, full-time employees of Sheraton Operating Corporation working in the state of California have worked at

---

³ A claim for rest break premiums based on an argument that rest breaks were not provided carries a three-year statute of limitations. *Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal.4th 1094 (2007). However, Plaintiff claims Defendant "has a policy and engaged in a systemic practice of not paying meal period and rest break premiums" and that such a policy and practice is actionable under the UCL as an unfair business practice. Compl. ¶ 43. Plaintiff's Third Cause of Action, in conjunction with his UCL claim, therefore seeks an additional hour of pay for every day with a meal or rest period violation since October 16, 2015—four years prior to the filing of the Complaint. *See Korea Supply v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003) (The UCL "'borrows' violations from other laws by making them independently actionable as unfair competitive practices"); Cal. Bus. & Prof. Code § 17208 (UCL claims have a four-year limitations period).

least 350,000 workweeks at an average hourly rate of pay in excess of $16. Palagano Decl., ¶ 3. Therefore, under Plaintiff's theory that Defendant did not provide meal or rest breaks, and assuming just one of *either* a rest or meal break violation per week,[4] Plaintiff's claim for meal and rest break wages places at least **$5,600,000** in controversy: that is, 350,000 workweeks multiplied by the $16 average value of one hour of pay that would correspond to just one violation per workweek worked. Thus, Plaintiff's meal and rest break claims in his First and Second Causes of Action alone surpass the $5M threshold for CAFA jurisdiction. Alternatively, assuming payment of at least minimum wage, which has been at least $10.00 per hour during the relevant period, the amount at issue would exceed $3,500,000.

### 2. Plaintiff's Fourth Cause of Action for Failure to Provide Accurate Wage Statements Puts An Additional $1,200,000 in Controversy.

Plaintiff's Fourth Cause of Action alleges damages from, and requests penalties for, Defendant's alleged failure to provide Plaintiff and the putative class with accurate itemized wage statements. Compl. ¶¶ 33-35. As he did for his meal and rest period claims, Plaintiff makes the sweeping allegation that "as part of its illegal payroll policies and practices to deprive its non-exempt employees all wages earned and due, DEFENDANT failed to provide PLAINTIFFS with wage statements and/or accurate wage statements as required by Labor Code § 226." *Id.* ¶ 34. Thus, it is reasonable to assume at least a 20% violation rate for purposes of establishing the amount in controversy.

A wage statement claim has a one-year statute of limitations. *See* Code Civ. Proc. § 340. The putative class worked at least 120,000 pay periods from October 16, 2018, to the present. Palagano Decl. ¶ 4. Therefore, Plaintiff's claim for wage

---

[4] This assumption for purposes of establishing the amount in controversy represents a 10% violation rate (*i.e.*, one violation out of five potential meal breaks plus five potential rest break violations per week).

statement penalties places at least **$1,200,000** more in controversy: 24,000 alleged violations, each with at least a $50 penalty.[5]

### 3. Plaintiff's Fifth Cause of Action for Waiting-Time Penalties Puts An Additional $1,152,000 in Controversy.

Plaintiff alleges that, "[a]t the time of *all* respective termination and quitting dates of PLAINTIFFS, PLAINTIFFS had unpaid wages which were due" and that Defendant failed to pay those wages. Compl. ¶ 38 (emphasis added). Thus, on the face of the Complaint, Plaintiffs' waiting time penalty allegations would apply to each and every former employee of each of the Defendants. *See, e.g., Marquez v. Toll Glob. Forwarding (USA) Inc.*, No. 218CV03054ODWASX, 2018 WL 3046965, at *4 (C.D. Cal. June 19, 2018) (noting that "[r]ecovery of penalties under Cal. Labor Code § 203 does not hinge upon the number of violations committed" and finding that for purposes of assessing the amount in controversy, "all 112 terminated/resigned employees experienced *some* kind of violation . . . for which they were still owed wages at the time their employment ended" (emphasis added)).

A claim for waiting time penalties under California Labor Code section 203 has a three-year statute of limitations. *See Brewer v. General Nutrition Corp.*, 2015 WL 5072039, at *13 (citing *Pineda v. Bank of Am.*, 50 Cal. 4th 1389, 1401-02 (2010)). The penalty under section 203 is measured at the employee's daily rate of pay and is calculated by multiplying the daily wage by the number of days that the employees was not paid, up to a maximum of 30 days' wages. *See, e.g., Ming-Hsiang Kai v. Joy Holiday*, 12 Cal. App. 5th 947, 963 (2017).

Since October 16, 2016 (the three-year limitations period under Labor Code § 203), the employment of at least 300 full-time putative class members has ended.

---

[5] Labor Code § 226 provides for a $100 penalty for "subsequent" wage-statement violations after the initial $50 violation per employee, but for purposes of establishing the amount in controversy, Defendant conservatively uses the lower $50 penalty for all alleged violations.

Palagano Decl. ¶ 5. Thus, Plaintiff's claim for waiting-time penalties places at least **$1,152,000** in controversy (300 terminated or resigned full-time putative class members x 8 hours per work day of daily wages x $16 per hour x 30 days). Even assuming that terminated employees made no more than the lowest minimum wage during the prior three years prior to the complaint of $10.00 per hour, the amount in controversy is at least $720,000 pursuant to this claim.

The amount in controversy from the claims discussed above is **$7,952,000** ($5,600,000 + $1,200,000 + $1,152,000). Even assuming that the putative class members made no more than minimum wage, or $10.00 an hour, the amount in controversy would be **$5,420,000** ($3,500,000 + $1,200,000 + $720,000).

### 4. Plaintiff's Other Causes of Action and Request for Attorneys' Fees Put Additional Amounts in Controversy, Further Exceeding the CAFA Threshold.

Defendant has demonstrated more than the requisite amount in controversy, as presented with this Notice of Removal. However, in addition to this amount, Plaintiff also seeks recovery of attorneys' fees. Compl. at p. 11. While, Defendant denies Plaintiff's claim for attorneys' fees, attorneys' fees are properly included in determining the amount in controversy. As *Arias* makes clear, "*prospective* attorneys' fees *must* be included in the assessment of the amount in controversy." *Arias*, 936 F.3d at 922 (emphases added); *see also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414–15 (9th Cir. 2018) ("[T]he amount in controversy is determined by the complaint operative at the time of removal and encompasses *all relief* a court may grant on that complaint if the plaintiff is victorious.") (emphasis added); *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 794–95 (9th Cir. 2018) ("The phrases 'all relief' and 'certain classes of damages' encompass *all of the plaintiff's future recovery*, not lost wages alone. Accordingly, *Chavez*'s reasoning *clearly applies to attorneys' fees*.") (emphases added).

For purposes of removal, the Ninth Circuit uses a benchmark rate of twenty-five percent of the potential damages as the amount of attorneys' fees. *In re*

*Quintus Sec. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (benchmark for attorneys' fees is 25% of the common fund). "Substantial authority supports a 'benchmark' 25 percent attorneys' fees figure to be *added* to any claim for which attorneys' fees are available" for purposes of assessing the amount in controversy under CAFA. *Herrera v. Carmax Auto Superstores California, LLC*, No. EDCV14776MWFVBKX, 2014 WL 12586254, at *4 (C.D. Cal. June 12, 2014) (emphasis added); *see also, e.g., Molnar v. 1-800-Flowers.com, Inc.*, 2009 WL 481618, *5 (C.D. Cal. Feb. 23, 2009) ("Applying a 25% fee estimate to the $2,931,794.63 compensatory damages figure . . . yields an attorneys' fee award of $732,948.65. Therefore, the Court includes this amount in determining the amount in controversy."); *Tompkins v. Basic Research LLC*, 2008 WL 1808316, *4 (E.D. Cal. Apr. 22, 2008) ("[T]he Ninth Circuit has established that 25% of the common fund is a fair estimate of attorneys' fees. This therefore adds $500,000 to the amount in controversy.") (internal citations omitted).

Even though Defendant has already demonstrated by a preponderance of the evidence that the amount in controversy exceeds $5,000,000, Defendant notes that the inclusion of attorneys' fees would add at least another **$1,988,000** to the amount in controversy (25% of $7,952,000), bringing the total amount in controversy to at least **$9,940,000**. Alternatively, assuming that the putative class earned only the minimum wage of $10.00, a 25% addition of attorneys' fees would add at least another $1,355,000 to the amount in controversy (25% of $5,420,000), bringing the total amount in controversy to at least $6,775,000.

### IV.   VENUE

This action was originally filed in the Superior Court for the County of San Diego. Initial venue is therefore proper in this district, pursuant to 28 U.S.C. § 1441(a), because it encompasses the county in which this action has been pending.

## V. NOTICE

Defendant will promptly serve this Notice of Removal on all parties and will promptly file a copy of this Notice of Removal with the clerk of the state court in which the action is pending, as required under 28 U.S.C. § 1446(d).

## VI. CONCLUSION

Removal to this Court is proper under CAFA jurisdiction. If any question arises as to the propriety of the removal of this action, Defendant requests the opportunity to present a brief and oral argument in support of its position that this case is subject to removal.

Dated:  November 22, 2019            MORGAN, LEWIS & BOCKIUS LLP

By  /s/ Barbara J. Miller
Barbara J. Miller
P. Bartholomew Quintans
Attorneys for Defendant
SHERATON OPERATING
CORPORATION